VICTORIA L. FRANCIS
Assistant U.S. Attorneys
U.S. Attorney's Office
2601 2nd Ave. N., Suite 3200
Billings, MT 59101
Phone: (406) 247-4633 – Victoria
Email: victoria.francis@usdoj.gov

ATTORNEY FOR PLAINTIFF
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$95,198.80, in U.S. CURRENCY and ASSORTED COLLECTIBLE COINS, NOTES, SILVER BARS, and GOLD-PLATED CURRENCY, VALUED AT $7,021.80,<br><br>Defendants. | CV 22-__09__-GF-__BMM-JTJ__<br><br><br>VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by and through Victoria L. Francis, Assistant United States Attorney for the District of Montana, brings this complaint pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure. The Plaintiff states and alleges as follows:

1

S:\civil\2021V00236\Verified Complaint In Rem.docx

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America, United States currency in the amount of $95,198.80 and assorted collectible coins, notes, silver bars, and gold-plated currency, valued at $7,021.80 (hereafter defendant property) for violations of 21 U.S.C. §§ 841 *et seq.*

## JURISDICTION AND VENUE

2. Plaintiff brings this action *in rem,* in its own right, to forfeit and condemn the defendant property under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over the action commenced by the United States under 28 U.S.C. §§ 1345 and 1355(a).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because this is a civil proceeding for the forfeiture of the defendant property that was found in Cascade County, Montana.

## FACTS

4. In May 2021, Sergeant Jack Hinchman of the Cascade County Sheriff's Office received information that Leland Lapier Jr. was involved in distributing methamphetamine in the Great Falls area. Sgt. Hinchman knew Lapier had recently been released from federal prison for serving a sentence for conspiracy to possess with intent to distribute a controlled substance and possession with intent to

distribute methamphetamine. Leland Lapier, Jr. had been sentenced in a judgment in 2013, to 105 months in federal prison and 48 months of supervised release.

5. On July 25, 2021, Deputy Evan O'Neill of the Cascade County Sheriff's Office, observed a red 2011 Dodge Nitro traveling at a rate of 46 miles per hour in a 35 mile per hour zone. Deputy O'Neill initiated a traffic stop of the vehicle. Deputy O'Neill approached the vehicle and identified the driver as Cheyenne Petersen. Petersen appeared nervous with visibly shaking hands. While retrieving her wallet from her purse which was on the floorboard of the front passenger seat, Deputy O'Neill observed a large amount of currency within the purse. Petersen appeared to be attempting to conceal the contents of her purse from Deputy O'Neill.

6. Deputy O'Neill returned to his patrol vehicle to check Petersen's license and for any outstanding warrants. Dispatch informed Deputy O'Neill that Petersen was deemed a habitual offender and her driver license was revoked and that she had a city warrant for her arrest. Deputy O'Neill requested backup to assist with the arrest of Petersen for Habitual Offender Operating a Motor Vehicle.

7. Deputy O'Neill instructed Petersen to exit the vehicle and explained she was under arrest and placed her in the back of his patrol vehicle. Deputy O'Neill requested a tow of the vehicle and then proceeded to move the vehicle off the roadway. Deputy O'Neill conducted a search of the vehicle in the immediate area

under Petersen's control to include observing the purse. Deputy O'Neill observed a small plastic sandwich bag containing a white crystalline substance. Based upon Deputy O'Neill's training and experience, he believed the substance to be methamphetamine. At this point, he informed dispatch that the vehicle would be impounded.

8. On July 26, 2021, a search warrant for the vehicle was granted and executed. Inside the vehicle Deputy O'Neill found $268 in U.S. Currency, a total of 26.6 grams of methamphetamine, .3 grams of marijuana concentrate, digital scale with residue, a pink bag containing collectible coins, and a clear plastic bag containing numerous coins. It was determined that there was enough evidence to charge Petersen with Criminal Possession of Dangerous Drugs with Intent to Distribute, Criminal Possession of Dangerous Drug Paraphernalia, and Possession or Use of Property Subject to Criminal Forfeiture and the case was forwarded to the Cascade County Attorney for review. A warrant for Petersen's arrest was later issued for drug violations.

9. On August 5, 2021, Sergeant Jack Hinchman had observed Cheyenne Petersen leaving the address of 3511 8th Ave. S., Great Falls. Hinchman knew this was an address associated with Leland Lapier, Jr., who is a known felon for a drug

related conviction. Sgt. Hinchman initiated a traffic stop. Petersen was arrested on the outstanding warrant related to the narcotics charges.

10. As part of the investigation, on August 9th, 2021, Sgt. Hinchman and Deputy Carr searched a trash can for 3511 8th Ave. S. The trash can was picked up by the City of Great Falls sanitation services in the alley behind Lapier's residence. The trash contained a trash bag and inside that trash bag Hinchman found mail addressed to Leland Lapier Jr. along with seven freezer bags containing trace amounts of a crystalized substance. A field test concluded the crystalized substance was methamphetamine. As part of the ongoing investigation Sgt. Hinchman applied for and was granted a Search Warrant for the residence of Lapier.

11. On August 9, 2021, prior to the execution of the Search Warrant, members of the Cascade County Sheriff's Office, Great Falls Police Department, Russell Country Drug Task Force, and the Drug Enforcement Administration, conducted surveillance of Lapier's residence to establish who was coming to and going from the residence. Lapier and Petersen were identified in the driveway of the residence. At approximately 1530 hours, the Search Warrant was executed. Lapier and Petersen were removed from the residence while law enforcement conducted the search.

12. Upon entering the residence, Sgt. Hinchman noted that most of the main floor was empty with exception to the kitchen. The bedroom in the basement of the

residence appeared to be occupied by Lapier and main efforts of the search were conducted in that room.

13. Law enforcement found a 100-gram digital scale with a white residue on it. The residue was later determined to be methamphetamine. Also in the basement bedroom, a small safe in the closet that contained a large amount of currency, later determined to be $3,674 in U.S. Currency wrapped in rubber bands. Based upon his experience and training, Sgt. Hinchman knew it was consistent with the method in which drug traffickers bundle their drug proceeds from the sale of illegal drugs. Under a pillow on the bed was a black backpack that contained $74,880.00 in U.S. Currency wrapped in rubber bands and placed in quart sized Ziploc bags. $992 in U.S. Currency was found in Lapier's wallet, and $373.00 in U.S. Currency was found on Lapier's person. $15,279.80 in U.S. currency was found in multiple folders, binders, and coin pouches, all within the closet of the basement bedroom.

14. In addition to the U.S. currency, silver bars and collectible coins were found in a wood chest located at the foot of the bed in the basement bedroom. The value of the silver bars and collectible coins were later appraised to have a retail worth of $7,275.80. In Sgt. Hinchman's training and experience, it is common practice for drug traffickers to convert some of their proceeds from the sale of illegal drugs into a commodity of value for purposes of laundering the proceeds.

15. While searching the basement bedroom, 2019 and 2020 W-2 income and tax records were found. Lapier's 2019 income statement revealed that Lapier earned $12,893.00. Lapier's 2020 income statement revealed he earned $23,752.00 with an additional $1,667.00 from his 2019 tax refund. An employment search for Lapier showed he has been unemployed throughout 2021. An employment search for Petersen showed she has been unemployed since the 4th quarter of 2018.

16. Records from the Montana Department of Motor Vehicles shows that Lapier purchased and currently titled in his name, four vehicles from October 2019, to April 2021. Other records observed during the execution of the search warrant showed that Lapier primarily pays for everything in cash. In addition to the cash found in the residence, several pre-paid debit cards were found in Lapier's possession. Given Lapier's documented income and lack of employment in 2021, he did not have the financial means to save large amounts of cash, purchase vehicles, silver, and collectable coins.

17. On August 12, 2021, the currency was transported to the Billings Police Department to conduct a K-9 sniff of the money. Officer Cache Anderson deployed K-9 Sam, trained in the detection of heroin, cocaine, and methamphetamine, to inspect the exhibits. K-9 Sam alerted to the odor of narcotics present on the currency exhibits.

18. Following the K-9 sniff, the serial numbers of the currency were run through a database that records "buy money" used by law enforcement to conduct controlled buys of narcotics. Some of the serial numbers of the currency returned as a match for money used in controlled buys in regional drug investigations.

19. The cell phones of Lapier and Petersen were seized for examination pursuant to the warrant. DEA Special Agent Randolph Ladd reviewed the forensic analysis of the phone and found Lapier used a variety of platforms to communicate, including SMS/iMessaging, voice calls, Facebook Messenger, and Signal App. Some of the contacts in Signal App were set to have the messages delete after a certain time period. SA Ladd found that Lapier requested many of his contacts to contact him through Signal App instead of texting or Facebook Messenger. Based upon his training and experience, SA Ladd believed this to be due to Signal App being an encrypted application with the option to have messages automatically delete after a set amount of time. SA Ladd believed Lapier to be excessively vague in his communications and to put extra effort into concealing his conversations, which in his experience is consistent with the sale of illegal drugs.

20. SA Ladd found that Lapier took great care to not use names during communications. Most of his contacts were not labeled, and those that were used monikers. SA Ladd was able to identify some people and the number they are

associated with in Lapier's phone. One of the individuals is Dan Wakeford whom Lapier had several conversations about procuring coins through a connection of Wakeford's for Lapier, as well as several messages to meet up. SA Ladd knows Wakeford previously served a sentence in federal prison for the distribution of methamphetamine.

21. SA Ladd reviewed messages that suggest Lapier to be selling drugs to Heather Dubois and that she is in debt to him by thousands of dollars.

22. SA Ladd also identified one of the contacts to be Oney Baker who from the content of the messages appears to be collecting money on Lapier's behalf.

23. SA Ladd identified Donna Lamere who Lapier has conversations about being owed money in July of 2021 and being repaid in August 2021. Lamere and Lapier coordinate to meet so that Lamere can receive the "same as last time."

24. Lapier and Cheyenne Petersen are in a relationship. Messages in the phone show that Petersen had become aware of Lapier's relationships with the other women and had broken out a window in Lapier's home and threatens to give up information on Lapier's criminal activity if he does not stop seeing other women.

25. Lapier has text conversation with an unidentified number ending in 4166 in which 4166 is negotiating with Lapier to drop something off to 4166. Other conversations reveal that 4166 has money for Lapier. Based upon SA Ladd's training

and experience, he believes the messaging described in this paragraph and the paragraphs above is indicative of drug transactions between buyer and seller and collection of drug proceeds.

26. The totality of the circumstances, including but not limited to the facts set forth above, support probable cause that the defendant property constitutes or is derived from a violation of 21 U.S.C. §§ 841. The circumstances include, but are not limited to, the following: the large amount of defendant currency, silver bars, and collectible coins, located in throughout the basement bedroom and on Lapier's person; the digital scale with trace amounts of methamphetamine; the seven freezer bags in the trash containing trace amounts of methamphetamine; the narcotics sniff by of the K-9 alerting to the bulk currency; currency associated with other controlled buy's, Lapier's lack of employment throughout 2021, and low income earnings for 2019 and 2020; cell phone messages indicative of drug trafficking; and Lapier's drug related criminal history, all of which supports probable cause that the defendant property seized constitutes monies or other things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds and things of value traceable to such exchanges, and money and things of value used or intended to be used to facilitate sales of illegal drugs, all in violation of 21 U.S.C. § 841, et seq.

27. The United States Marshals Service has possession, custody, and

control of the defendant property.

## CLAIM FOR RELIEF

28. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 27 above.

29. The defendant property constitutes monies or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C.§ 841, *et seq*.

30. As a result of the foregoing, the defendant property is liable to condemnation and forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

DATED this 3rd day of February, 2022.

                                                      **LEIF M. JOHNSON**
                                                      **United States Attorney**

                                                      **/s/ Victoria L. Francis**
                                                      **Assistant U.S. Attorney**
                                                      **Attorney for Plaintiff**

## VERIFICATION

I, Special Agent, Randolph Ladd, declare under penalty of perjury that I am a Special Agent with the U.S. Drug Enforcement Administration (DEA). I have read the foregoing Verified Complaint *in Rem* and know the contents. The matters contained in the complaint are true and correct. They are based on either my personal knowledge, or alleged on information provided, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, including the Cascade County Sherriff's Office, the Great Falls Police Department, the Russell Country Drug Task Force, as well as my own investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 3rd day of February, 2022.

_____
Randolph Ladd
Special Agent
Drug Enforcement Administration